Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the 11th Circuit. Today our first case is USF Federal Credit Union v. Gateway Radiology Consultants PA. I would just ask that you please identify yourselves before you speak and we will try to do the same. Case number is 20-13462 and Mr. Salzman whenever you're ready you may begin. Thank you your honor and may it please the court. Joshua Salzman on behalf of the Small Business Administration. SBA acted within its regulatory authority when it determined that entities in active bankruptcy should not receive loans under the Paycheck Protection Program. The district courts contrary of rests on a failure to afford SBA the deference to which it's entitled and a misapprehension of the statutory scheme. I can walk through the specific arguments in detail but I'd like to begin by stepping back and setting the scene. Congress was responding to the potential of the American economy completely cratering. Counselor, we're familiar with that. If you'd get to the specific issue it would, this Judge Carnes, it would help me. Let me ask you right off about one thing I couldn't tell from your briefs. Are you asserting sovereign immunity as a threshold defense? Are you asserting it in the alternative if we don't agree with you on the merits? We are not asserting it as a threshold defense your honor. We think the proper way to, our preference frankly, is for you to resolve the merits and to have you uphold this program which we think does survive APA review. But we do think that there are problems under Section 634 that preclude the issuance of the injunction here. But we don't see this as a threshold issue that has to be resolved first the way an Article 3 jurisdictional problem would need to be resolved first. And there are decisions, for example, in the tradeways case from the bankruptcy court in the District of Maryland that's cited several times in our briefs. That's a case, for example, where the court did not view the, did not think there was an obligation to resolve the 634B issue first and cited some authority to that effect. And we agree that it would be appropriate for you to get to the merits here. Can I ask you a question about that as well? Actually it's about the Stern issue that's involved. Are you, I guess I can ask each defendant separately, but are you, have you consented? Because I noticed that during the hearing, during one of the hearings, the government was saying that it had not consented and then afterwards it sought to withdraw the reference. So that's the other issue, the other sort of threshold issue. Are you, have you consented to jurisdiction before the bankruptcy court? No, we haven't, Your Honor, and Your Honor is right to note that at the very initial hearing we flagged a possible, this one was before the adversary hearing was, the existence of a possible Stern issue, that the fact that this would be a non-court proceeding. We attempted to withdraw the reference after the court made clear that it was intending to nonetheless resolve the merits of this APA issue. So we haven't consented to this. That being said, we were in an interesting situation here because of the strange posture in which this case was being taken at the stage, at the petition stage before the motions panel that was deciding whether to allow for an inter, for discretionary direct review here. And the reason things are complicated is because though this is a non-court proceeding as to the injunction that the bankruptcy court lacked authority to decide, it nonetheless incorporated that analysis subsequently into its 634, I'm sorry, its 364B order that authorized Gateway to take the loan. And while we think that that was a misuse of the 364B procedure, it, that order nonetheless is in fact a core bankruptcy matter that the bankruptcy court had authority to issue. And because that order is wrapped up in the previous conclusion of the court that the rule was invalid and should be enjoined, this court has the effective power to review the merits through that back door notwithstanding that this is not a court proceeding as to the principal issue here and notwithstanding the fact that we didn't consent. This is Judge Anderson speaking. I did see that you mentioned that in your brief and also in those briefs to the administrative panel. However, I'm not at all sure that you are right that this is just an easy piggyback ride on the 364 order. It seems to me that unless several things were true, the court did not necessarily have to decide the, I call it the exceeding authority order, you know what I'm talking about. Yes, your honor. And the issue is whether that exceeding authority issue was necessarily decided in order to decide the 364 approval order. That's the Stern v. Marshall test that the bankruptcy court can issue a final judgment on a non-core matter only if it is necessary in order to resolve a core matter. Is that not the correct test? I think the right way to think about this at this stage is not in through a Stern v. Marshall lens as to that, but rather perhaps through a pendant jurisdiction lens. So the matter is before the court. I think for the reasons we've touched on, the 364B order is properly before the court. So then if you look at that order, and this is docket number 266 from the main docket, you have an order that says because the court has determined the rule is unenforceable to the extent it disqualifies the debtor from participating in the paycheck protection program. The court orders it's appropriate to overrule the objections and grant the debtor's motion. And then in the the decretal paragraphs, the court specifically purports, this is in the context of the 364B mind you, to specify that neither loan forgiveness nor the SBA guarantee shall be conditioned on the debtor not being in bankruptcy. Let me stop you, Judge Anderson, again. Number one, I think the test on dependent appellate jurisdiction is the same, is it not? Namely that the decision has to be necessary. You have to necessarily decide it in deciding the other issue. I believe that's correct, Your Honor. So it really doesn't matter whether you're talking about the Stern test or the dependent appellate jurisdiction test. Furthermore, I'm not sure anyway that you can just substitute the dependent appellate jurisdiction test because if the bankruptcy court did not have constitutional authority under Northern Pipeline to issue a final order, then under our Wartley decision, we do not have appellate jurisdiction under 158. Is that not true? I would agree with that, Your Honor. And indeed, as I said, we flagged this potential issue at the at the petition stage for the court. The court nonetheless granted review here. Obviously that's not binding on this panel, and if there's a jurisdictional defect, obviously that's going to be a bar that's going to prevent the court from reaching it. So our issue is whether or not it was necessary for the bankruptcy court to resolve the exceeding authority issue in order to resolve the approval order 364 issue. And I'm not at all sure it is, especially because certainly before getting there, the bankruptcy court could have and perhaps should have resolved the falsification issue. And if the falsification issue was resolved against Gateway, I assume that if there were a binding obligation to lend to Gateway, it would be unenforceable. Is that not true? Um, I suppose that would be correct, Your Honor. Yes. Well, not only that, but let me ask you this, and maybe this is Judge Carnes again, maybe this is oversimplifying, but the bankruptcy court's function, the core function, is to decide whether or not this debtor can undertake this obligation, this loan, if he can get it, if it can get it. All the bankruptcy court has to say is not whether the lender should give the loan, but whether it's okay for the debtor to take out the loan if the debtor qualifies and can get the lender to give the debtor the loan. Isn't that, is that too simple? No, and we wholeheartedly agree that this was, and as we argued in our brief, that this was a misuse of the 364B process here, that nothing in 364A authorized the bankruptcy court to compel SBA to guarantee a loan or to compel USF Credit Union to lend. So I would certainly agree with that framing. If the court has further questions about the procedural posture, I'm happy to answer them, but I would, in my last two minutes, like to at least briefly touch on the merits in case the court does decide that it ultimately can reach them. I do want to emphasize that this was a program that was adopted by Congress utilizing the structure of Section 7a of the Small Business Act. SBA has long-standing authority to set lending criteria. Under that, nothing in the CARES Act displaces SBA's regulatory authority, and on the contrary, SBA was granted additional rulemaking authority under Section 1114, and simply nothing in the statute is contrary, or certainly manifestly contrary, which is the applicable standard to SBA's policy here. Likewise, it was not arbitrary and to adopt a test that would be administrable and allow it to get hundreds of billions of dollars out the door in a matter of weeks to millions of distinct borrowers by using a streamlined test for determining whether loans would be of sound value. Let me ask you one last question, and that is, if we disagree, would you jump the line and decide that the statute doesn't waive sovereign immunity against any and all injunctions against the SBA? Is that the end of the lawsuit? Not necessarily. There are a lot of complicating factors here, including the ending of the program. There are statutory deadlines for when these funds need to be used. There were relief. So in light of those claims, I think there's a fair argument to be made that those could not be finally decided by the bankruptcy court, but I think I can't say that under the Fifth Circuit's Hidalgo decision, or this court's, or the expedient decision, which is precedent in this court, that 364B would necessarily foreclose all litigation of this issue in light of the claims for declaratory relief, but I do think that there's a potential for mootness. I'm not quite sure what would happen at that point, but as a technical matter, no, I don't think it would completely resolve the litigation. All right, but maybe my question was too broad. It would completely resolve this appeal, would it not? Yes, I think it would. Okay. Let me ask this Judge Anderson, if I may ask one more question. Did the credit union tell the bankruptcy court that it was no longer a willing lender, and that it wanted to rescind the obligation on the basis of that falsification? I believe it did, though I think I would that objections were filed by USF, and USF has sought to oppose the 364B order here, citing the false or inaccurate statement as to bankruptcy status. Thank you, counsel. You've reserved four minutes for rebuttal, and we'll hear from Ms. Thank you. My name is Megan Murray. I represent USF Federal Credit Union, and in making this Paycheck Protection Program loan to the debtor, Gateway Radiology, under the CARES Act, USF only had two prerequisites. One, that the SBA was going to guarantee the loan, and two, that the debtor's twofold representations were accurate, in that it did indeed meet the eligibility requirements under the CARES Act, and two, that the funds would be used pursuant to the PPP rules that were enacted. Those are the only two requirements that it had. USF didn't do any additional underwriting because none was required, and as Mr. Salzman noted, none was really encouraged because the focus of the program was to deploy funds very quickly during the pandemic. So USF relied on the SBA's guarantee and the borrower's very limited representations, and didn't do its own additional underwriting. But the problem was that neither of the preconditions to the loan were met. The SBA obviously did not guarantee, and the debtor was obviously not eligible, at least under the statutory and framework of the PPP program and application requirements, that it not be a debtor in bankruptcy. And so in that, in that, USF's free will to make loans was taken away without its consent. If either one of these preconditions or lack thereof had been disclosed, we would have been in a situation more like Hidalgo, where the post to here, where USF initially funded the loan into escrow, did not release the funds, and then later upon the application approval, the, it's true, just its intentions were disclosed to the bank, and the fact that it was a debtor in bankruptcy was disclosed to the bank after the fact. So there was really no meeting of the minds as to the intent of the bank to loan a PPP loan to a debtor. The USF's objections regarding the lack of the meeting of the minds was disclosed to the Bankruptcy Court, as Mr. Salzman noted, but it wasn't ruled on directly. And even if you get around the the initial prohibition against enjoining the SBA under Section 634B, it is ironic that the justification for the Bankruptcy Court's order, at least in part, is that the SBA's risk perception was wrong, because the Bankruptcy Court has means to enforce its orders and control process in the Bankruptcy Court and ensure repayment. And the reason it's ironic is because this debtor didn't comply with all of the bankruptcy rules and processes in order to obtain this loan. Its application was incorrect, which puts us where we are today. So I think when you get down to the arbitrary and capricious nature of the argument, there's certainly no guarantee that a Bankruptcy Court authority would necessarily prevent wrongdoing or necessarily ensure payment of a PPP loan in accordance with the guidelines. And so in that, the Bankruptcy Court, I think, was inserting its own judgment for that of the SBA. And I think the ultimate question is not whether the Bankruptcy Court was, or rather the SBA was correct in its risk analysis empirically, but whether its decision was reasonable. And I see I'm out of time, so I would request that the court just simply reverse the opinion of the Bankruptcy Court. All right, thank you, counsel. Let's hear from Mr. Udell, please. Good morning. May it please the court, Warren Udell on behalf of SBA. I think I need to address the discussed in the briefs. It seems like it's pressing on the court and members of the panel. I think clearly the court has jurisdiction to communicate this. This is Judge Anderson speaking. You are not coming through clear to me. Would you speak loudly and slowly and into your telephone? No problem, your honor. That's a good point. Well, I need to address the jurisdictional issues, what I was saying. And I think clearly the court has jurisdiction to address this appeal. I think the SBA, by virtue of asserting their arguments, have simply waived this argument at the jurisdiction. I think they want a ruling on this. Now, obviously... Let me stop you for just a second, if you don't mind. This is Robin Rosenbaum. With respect to the Stern issue, they can't really waive that, can they? I mean, at this point, if they didn't... if they had objected previously, which they did, and if there was a requirement that... if it wasn't necessary for the bankruptcy court to resolve the exceeding authority issue, isn't there a problem? In other words, if the bankruptcy court, as Judge Anderson was alluding to, I think, could have resolved this instead on the falsification issue, possibly, and was there... then was this a core issue or a related to issue? I mean, how would it be related to... how would it be inextricably intertwined in that circumstance? I think it is because the way it was created was by virtue of an application which inserted a specific, you know, discussion. Are you, are you not in bankruptcy? That is not in the statute. That is purely created by the SBA. So it's certainly necessary to get to that if the courts believed, and obviously it did, that it was necessary to identify whether or not that was discriminatory against Chapter 11 debtors. Let's counsel this, Judge Carnes. Let me ask you this. So your position is that an applicant for a loan can lie, and then when caught in the lie, can argue, well, they didn't have really authority to ask me that question, right? I would, first of all, I wouldn't characterize it as a lie because there's the dispute as to exactly what happened with the application. I don't understand that dispute, but, but to get past the fact that the district court didn't resolve it, I think you have to assume it was a lie, because you can't assume, well, if the district court had resolved it, the district court would have found that it wasn't a deliberate misrepresentation. It was just accidental. However, that could have happened because you're assuming the facts against the party that you're making the decision against. If you're going to say, well, it wasn't false, then fine. The bankruptcy judge should have gone into that. But I think what the bankruptcy judge did was saying, what was the question presented and is it applicable? So, if the bankruptcy court did, whether it articulated it this way or not, is I will assume it was a lie. It doesn't matter because. Don't you agree? Correct, but, but his position and the bankruptcy court position was the fact that this question discriminates against Chapter 11 debtors. Means that they can, means that they can falsely answer, is your position. Correct, if it has no bearing on the application. As opposed, as opposed to saying, yes, we are in bankruptcy, but this has no application to the legitimate loan process, and you cannot consider it under the law. Your position is, lie first, explain later if you have to. I'm not criticizing you, and I don't mean you personally, but that's your client's position. Understood, understood, your honor. The position is, first of all, it wasn't a lie, but second of all, if it was in fact a lie, it is. Counsel, we're having a problem here. I thought you'd agreed with me that the bankruptcy court had assumed, in the course of its decision, had to have assumed that it was a lie, and then basically ruled, the only ground it ruled on was, it doesn't matter if it was. Correct, correct. I thought you were asking for Then, then it would, it would help further the analysis if you don't keep protesting that it wasn't a lie, because. I understand. Okay, so that, that's your position. I just wanted to clarify. Answer another question for me, which I asked earlier, and, and that is, why does the approval process give the bankruptcy judge the authority to order a lender to change the terms of the loan? This is not a pre-bankruptcy loan. This is not a debt of the debtor. This is a ongoing, chapter 11, and a lender says, I'm, let's take this hypothetical. Lender says, I'll loan you X amount of money that you want, at the rate of 11%, and the, the debtor applies in bankruptcy court and says, approve this loan, and the bankruptcy judge says, I think it's a good thing. I think it'll help the process. I think it'll help the debtors and creditors, and I mean the debtor and all the creditors, but I think that loan interest rate is too high. I'm gonna knock it down to 8%. Can the bankruptcy judge do that? I don't believe so, but in this instance, it's, whether they are lending at all. In other words. No, no. USF, USF funded the loan. Yeah, but they, they have said without contradiction, they would not have funded that loan, had they known that Gateway was in bankruptcy. So, it seems to me that, that the bankruptcy court has changed a term or a condition that led to the loan. Just like if it had turned, changed the interest rate. I think it goes back to the core issue, and the core issue is the loan, and I'm using the word loan, it's really a grant. It's not a loan in the ordinary term and the usage of a loan. Whatever it is, counsel, counsel, I'm sorry, this, I'm giving you an opportunity to persuade me I'm mistaken on what I understand this to be about. The question was whether the bankruptcy court would let the debtor take out this loan. That's what the approval process is. The bankruptcy, we've agreed, doesn't dictate the terms. It may dictate the terms of approval, but it can't force the lender to accept those terms. So, all the bankruptcy court can do is say, I approve this loan, or I don't approve this loan. This bankruptcy court went beyond that and said, I approve this loan. I'm going to say, don't you withdraw, or you better reinstate the guarantee. The loan, but remember, the loan was approved, the loan was made, and then the bankruptcy court made the determination that USF cannot go back on that, and that was, the reasoning was, because of the discriminatory nature of the rule created by the SBA as to Chapter 11 debtors. Going back to what the overall reason for the loan was, this was not the ordinary business loan. This was a loan in the middle of a pandemic to keep employees employed throughout the country, and in this particular instance, in Pinellas County, Florida. So, the and my client filed a motion to compel to order the release of those funds, and USF said, we wouldn't have issued the loan but for your falsification of the application as to bankruptcy, and that was when it was adjudicated that whether or not that was valid, that's what the court took up. That's what the court discussed. Was it valid to not prevent a loan, to prevent a loan based on Chapter 11 status? And the court's reasoning was clear, because a Chapter 11 debtor is under scrutiny from courts and creditors, whereas any person on the street, I'm using the word person, any company with less than 500 workers who is in business as of February 15th, 2020, and had a payroll could obtain this loan, period. And the statute specifically did not exclude Chapter 11 debtors. So, that was the reasoning for the court approving and requiring the loan to be used by, to be, you know, allowed to be used by Gateway. Remember, the loan was was funded, and then held in escrow. So, you know, I don't think it was ever adjudicated below, specifically, or tried by USF on the falsification issue, and the court said it doesn't matter because we're going back to the core issue of the discrimination of Chapter 11 debtors. You know, I can understand the court conditioning and approval on anything the court wants to condition it on, including my hypothetical about a lower interest rate, but requiring that the loan be made and attaching there to conditions that weren't negotiated in the loan process is an entirely different thing. And the condition here being attached that wasn't negotiated is you can't withdraw the guarantee because of bankruptcy. But if we remember, the loan was, could not be guaranteed, you know, could not, the guarantee cannot be withdrawn because of the discriminatory nature of the rule, which was arbitrary and capricious. That's, that's why it relates back to that. So, I understand that the court's reasoning on, and the ordinary business loan, this would make sense, but this is not the ordinary business loan. This is the CARES Act in the middle of a pandemic to get money to employees. So, I think when the court looked at that and looked at the reasoning and the actual language of the CARES Act, where there was no justification for eliminating Chapter 11 debtors from receiving these funds, the court made the finding, and the findings were pretty clear, and I think the court's findings specifically, and the SBA's actions were arbitrary and capricious because the SBA's reasoning for not allowing Chapter 11 debtors to receive PPP loans or the infrequency of repayment, that is not an any PPP loan. Repayment is not a factor. So, there's no, there's absolutely no underwriting. This is literally a loan program. So, let me ask, let me ask you this question, get back to my concern, and I apologize for reiterating, but it is my main concern about this disapproval. Hadn't made it. The debtor, Gateway, goes in and asks the judge, says, look, I want you to approve this loan. They hadn't made it, but the reason they didn't make it is they discriminated against me because I'm in Chapter 11, and the court says, okay, I'll approve that loan, and I enjoined the SBA from refusing to make it, I'm sorry, refusing to approve it, and USF from refusing to approve it. I mean, it's still the national emergency. We have an economic deal, and Congress wants to get the money out as fast as possible, and this is clearly discrimination against somebody in bankruptcy. That's the reason they didn't make or approve the loan. Now, does the bankruptcy court have the authority to order USF and the SBA to make and approve the loan? It's a tough question, Your Honor. I think in general, no, but in this instance, I would say yes, because the CARES Act had specific statutory reasoning and groundings which were to get money out to otherwise. Your position, just so I understand you, and then I promise you this is the last question I'll ask. Your position, then, is that the bankruptcy court would have been required, I'm sorry, would have been authorized to order the SBA to approve a loan it had not approved, and USF to agree to make a loan it had not been, it had not agreed to make if the reason they hadn't approved it, hadn't made it, was that the applicant was in bankruptcy. Correct, because if it was otherwise a discriminatory issue, there's no other reason to not allow the approval. And that's part of the approval process. The bankruptcy court gets the final say on whether a loan that hasn't been made and whether it is approved by the SBA that hasn't been approved by the SBA. In a hypothetical world, probably not, but obviously in this instance, the loan had already been made. Okay, so your position wouldn't require, I mean wouldn't authorize the bankruptcy court to order the SBA to approve it and USF to make it? I don't think, I don't think legally it could. I don't think legally it could. Okay. But in this instance, because the loan was approved and the underwriting, the only underwriting done was those two issues and the melded on issue of whether or not the entity is in bankruptcy, that's the reasoning. And that's the reason why the rule which eliminated Chapter 11 debtors from eligibility for these funds is arbitrary and capricious, because there's no other palpable reason to not send the money out to employees or to keep businesses operating during a pandemic. I think in the ordinary course of business, we're not even discussing this, but because of the National Emergency, the issue of the CARES Act, the specific findings of the SBA's actions were arbitrary and capricious because there's no rhyme or reason tied to it. This is Judge Anderson, this is Judge Anderson talking. So your position I'm gathering is that there was a binding contract entered into when the part of the credit union to make the loan was submitted, presented to the bankruptcy court, and that loan was approved. So in effect, bankruptcy court was engaging in a non-core inquiry enforcing a state law contract to make a I wouldn't say it was non-core because the issue related back to whether the loan... Sorry. Two minutes remaining. Thank you. I lost my train of thought. I would say that it was a core issue because of the fact that the reason for the only reason not to pay the loan, so to speak, allow the use of the loan, was the discriminatory nature of the rule. So the bankruptcy court was basically enforcing an otherwise valid loan. There were only two possible underwriting issues for payment of the loan. Obviously, were you in business and did you have a mortgage and payroll? So under your position, a cocaine business that has fewer than 500,000 people is automatically entitled to a PPP loan to be guaranteed and forgiven. Is that right? Well, obviously it has to be a legal business, so I don't think that's... That's not in those eligibility requirements in D-1 636. A-36 D-1 that you say is the only eligibility requirement. Well, I believe you have to be an ongoing business concern. An ongoing business concern? Well, illegally could be a cocaine business. That's not a legal ongoing business concern, so I don't believe that would make it eligible. I understand. I think my time is wrapping up, so for the reason I stated in the reason I briefed, I'd ask the court to affirm the bankruptcy court's order and require the loan to be... and allow the loan to be used because the loan may actually expire soon based on the PPP program. Thank you, Mr. Udell. Mr. Salzman. Thank you, Your Honors. This is Josh Salzman again. I don't have much to add unless the court has questions for me. I think the court's already fully explored several respects in which the bankruptcy court overstepped its authority, both as to the court proceeding, non-core proceeding issue, by enjoining SBA and effectively compelling it to dispense federal funds or to guarantee a loan in violation of 634B, and also in overstepping its authority under the ability to approve credit under 364B of the bankruptcy code. If the court does reach the issue... This is Judge Anderson. Is the bankruptcy court... I heard your opponent for Gateway suggest that all of this came... was brought up to the bankruptcy court in response to Gateway's motion to compel the disbursement of those funds, so do the bankruptcy court orders require the disbursement of those funds and the guarantee by SBA and forgiveness? I think they do, Your Honor. I think that if you look at the language of both, first the order entering the preliminary injunction on the adversary docket, and then also the order approving the loan, it says that effectively the loan shall be made and shall be eligible for forgiveness and shall be guaranteed. So I think any fair reading of that does compel USF to lend and SBA to guarantee and forgive. And at least as to the SBA piece of that, we'd say that that was in excess of the court's authority under 634B, the anti-injunction provision. In fact, it's right, squarely rejected that very same argument of a claim of specific enforcement of a loan was expressly rejected in the Romeo, the US case in the former Fifth Circuit. Is that not correct? I believe that's correct, Your Honor. And that's, I think on all fours here, as to that piece of this, and then you certainly have the further precedent that comes from the expedient case, which was also in the former Fifth Circuit and is binding precedent here. So you've got that piece of it, you've got the misuse of the 364B, which is about approving what the debtor is able to do, but was misused to impose conditions on SBA and on USF Federal Credit Union. And we would submit if the court finds that it is, has jurisdiction to reach the underlying merits here, that it should conclude that just as the district court overstepped its authority in those other respects, it also overstepped its authority in substituting its policy judgment for that of SBA in determining that it was not legally permissible for SBA to adopt the rule that created an administrable means of determining whether loans were of sound value by looking to whether or not the applicant was already in bankruptcy. I've got something further on. Yes? Let me ask, let me ask you one question. Suppose this had nothing to do with the, well, suppose there was no requirement that the debtor not be in bankruptcy, or it was a underwriting consideration but not a requirement. Suppose the application form didn't ask and SBA approves the loan without any misrepresentation, and then later it the debtor is in fact a Chapter 11 debtor, and rescinds the approval of the loan. Is that, and Gateway goes to the bankruptcy court and says, help us out here. Keep them from doing that. Is that a core issue, core function? Sorry, Your Honor. I was expecting a question about 634B, not the CORA, based on the Is that a core proceeding? I'm not sure if it is, because I'd imagine that that's something that could arise outside of bankruptcy. You could certainly imagine somebody bringing a suit in district court, in APA claims, saying that this was, you know, a breach of contract or a retroactivity, raising a retroactivity claim. I could certainly imagine a suit like that in district court, so I do question whether that would be a core bankruptcy proceeding. Okay. Sorry, go ahead. No, I was going to conclude, so if Your Honor has a further question for me, I'd be happy to answer it. No, that's okay. Go right ahead. Well, for all of these reasons, because the bankruptcy court overstepped its authority in several respects, both as to its sort of threshold authority to side these issues, and then ultimately in substituting its judgment for that of SBA, we would ask you to reverse. Thank you. Thank you, counsel. We will take this under advisement, and we will be in agreement.